

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTOR R. GUINTO, ) | |
| ) | |
| Plaintiff, ) | 06 C 4816 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| EXELON GENERATION COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted.

## I. BACKGROUND

### A. Facts

Defendant Exelon Generation Company, LLC ("Exelon"), or one of its predecessors, hired Plaintiff Victor R. Guinto ("Guinto") in May 1981. Guinto began working at Exelon's Dresden Station as an Equipment Attendant. In January 1983, Exelon transferred Guinto to its Braidwood Station and promoted him to Electrical Operator. Shortly thereafter, in July 1983, Exelon promoted Guinto to the position of Nuclear Station Operator. Later, in February 2001, Exelon promoted Guinto to Senior Training Specialist.

Exelon's Braidwood Station operates two nuclear reactors through the use of one control room. The employees in this room are known as Reactor Operators ("RO"). The ROs are

1

directly supervised by Senior Reactor Operators ("SRO"). A minimum number of SROs must be present in the control room at all times.

The RO position is considered a salary level three. The SRO position is also a salary level three position. Usually employees within the Operations Department begin in the RO position, advance to the SRO position, and finally advance to Shift Manager. However, to become an SRO, candidates must complete a two year training program. The usual process for selecting candidates for the SRO licensing class includes a screening for minimum qualifications, followed by an interview. All qualified candidates are considered by a selection board, which recommends the employees that should attend training.

In February 2004, Exelon posted openings for the SRO licensing class. Eight people were to be accepted into this class. The Selection Board for these openings included: Cheryl Gayheart, the Shift Operations Superintendent; Gary Dudek, the Director of Operations; Karen Greig, the Human Resources Director; Carl Dunn, the Training Director; and Keith Polson, Plant Manager. Several of these individuals had prior experience working with Guinto.

Guinto applied for the 2004 SRO licensing class, as well as the position of Work Week Manger, a salary level four position. Guinto first interviewed for the Work Week Manager position with Karen Greig and Kelly Root. Guinto was offered this position, but only at a salary level three because he did not meet all of the prerequisites for the position. Guinto rejected this offer. Instead, he reaffirmed his interest in the SRO licensing class.

Since Guinto had recently been interviewed for another position, Exelon told him he did not need to be interviewed again for the SRO position. However, Cheryl Gayheart did have a conversation with Guinto before the 2004 SRO licensing class was selected. As part of this conversation, she inquired about Guinto's career goals and retirement plans. Specifically,

2

Gayheart asked, "Do you plan on retiring?" Guinto responded: "Yes, don't you?" At the end of the conversation, Gayheart informed Guinto that the Selection Board was looking for people who would be willing to spend six or seven years in the control room before transferring.

Despite having the technological qualifications for the SRO position, he was denied entry into the 2004 class. The Selection Board felt that Guinto had trouble with leadership skills and he did not display a real desire to be a first line supervisor. This evaluation was based on several Board members' personal experience with Guinto in the workplace. Finally, the Selection Board ranked him either ninth or tenth out of all the candidates. Only the top eight candidates were selected for the 2004 SRO licensing class. All of the eight selected candidates were at least ten years younger than Guinto.

After being denied entry into the 2004 SRO licensing class, Guinto filed a complaint with Exelon's Human Resources Department. Immediately following this, he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 27, 2004.

On September 15, 2004, Exelon issued a new Human Resources Policy HR-AA-2007 (the "Policy"). The Policy provided that an applicant may not become a supervisor without going through an assessment center run by an outside vender, MICA. MICA evaluates potential employees and rates them from green (suitable for the position) to red (not recommended). The Policy further provided that any employee receiving a red MICA rating could not be hired or promoted.

In the fall of 2005, Exelon once again posted openings for an SRO licensing class to begin in 2006. Guinto applied to this class as well. Guinto underwent an assessment with MICA, where he received a red rating. The Selection Board did not accept him into the 2006 SRO licensing class.

3

## B. Procedural History

Guinto first brought his concerns to Exelon's Department of Human Resources on October 27, 2004. Guinto then filed a complaint alleging age discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 30, 2005. Guinto received his first right to sue letter from the EEOC on August 16, 2006. On June 23, 2006, Guinto filed an additional complaint with EEOC. Guinto received his second right to sue letter from the EEOC on September 25, 2006. Guinto filed his First Amended Complaint in the District Court on September 29, 2006, alleging age discrimination and retaliation under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. Exelon moved for summary judgment on September 14, 2007. The Motion is fully briefed and before the court.

## II. DISCUSSION

## A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the

4

light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

### B. Age Discrimination

Guinto brings his claims for age discrimination and retaliation pursuant to the Age Discrimination in Employment Act ("ADEA"). See 29 U.S.C. § 621 et seq. The ADEA prohibits age discrimination in employment against individuals who are forty or more years of age. See 29 U.S.C. §§ 623(a) and 631(a). The purpose of the ADEA is "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). It is well established that an ADEA plaintiff cannot prevail if his employer "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." Hartley v. Wisconsin Bell,

5

Inc., 124 F.3d 887, 890 (7th Cir. 1997). Moreover, "[a] plaintiff seeking relief under the ADEA must establish that he would not have been treated adversely by his employer 'but for' the employer's motive to discriminate against him because of his age." Baron v. City of Highland Park, 195 F.3d 333, 339 (7th Cir. 1999) (citing O'Connor v. DePaul Univ., 123 F.3d 665, 669 (7th Cir. 1997)).

### 1. *Direct Evidence and the McDonnell Douglas Burden Shifting Method*

Direct evidence of discriminatory intent is evidence that shows the employer's intent without the need to rely on "inference or presumption." Bahl, 115 F.3d at 1290 n6. Direct evidence is evidence that "speak[s] directly to the issue of discriminatory intent, [and] also relate[s] to the specific employment decision in question." Oates v. Discovery Zone, 116 F.3d 1161, 1170 (7th Cir. 1997). It is likely the case that the only real direct evidence of discriminatory intent is an admission by the employer. Logan v. Kautex Textron N. Am., 259 F.3d 635, 638 (7th Cir. 2001); Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). In this case, Guinto presents no evidence that anyone at Exelon admitted any discriminatory intent before, during, or after denying Guinto admission into the SRO licensing program.

Guinto must therefore proceed by means of the McDonnell Douglas burden shifting method. See McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under this method, Guinto must first establish a prima facie case. If a plaintiff presents a prima facie case, there is a presumption of discrimination or retaliation, and the burden shifts to the employer to show a "legitimate, nondiscriminatory reason" for the adverse employment action. Stockett v. Muncie Ind. Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000); see also Little, 369 F.3d at 1011.

If the employer can show a legitimate reason for the adverse action, the burden shifts back to the plaintiff to show that the proffered reason was not pretextual. Stockett, 221 F.3d at 1001; see also Gordon v. United Airlines, 246 F.3d 878, 886 (7th Cir. 2001).

### 2. *Guinto Has Established a Prima Facie Case of Age Discrimination*

To establish a prima facie case of discrimination under the ADEA, Guinto must demonstrate that: (1) he was over forty years of age during the time period relevant to this case; (2) he was meeting Exelon's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated younger employees were treated more favorably. See Kautex, 259 F.3d at 639; Wolf v. Buss (Am.) Inc., 77 F.3d 914, 919 (7th Cir. 1996). Guinto has successfully established all four elements of his prima facie case.

First, it is undisputed that Guinto was over forty years old during the events in question. At the time Guinto was rejected for the 2004 SRO licensing class, he was fifty-five years old. When Guinto was rejected for the 2006 SRO licensing class, he was fifty-seven years old. Second, Guinto has provided evidence that he was meeting Exelon's job expectations at the time he applied for the SRO licensing class. Guinto had applied for, and was offered, the position of Work Week Manager earlier in 2004. Further, Exelon does not dispute that Guinto was meeting its job expectations. Third, Exelon concedes that being rejected from the 2004 and 2006 SRO positions constitutes an adverse employment action.

Fourth, similarly situated younger employees were treated more favorably within Exelon. A similarly situated employee "is one who is 'directly comparable to the plaintiff in all material aspects.'" Bio v. Federal Express Corp., 424 F.3d 593, 596 (7th Cir. 2005) (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). The Seventh Circuit has recently

7

reminded district courts not to apply the "similarly situated" test in an "overly rigid" manner. Henry v. Jones, 507 F.3d 558, 564 (7th Cir. 2007). "The similarly situated inquiry is a flexible, common sense one that asks, at bottom, whether 'there are enough common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.'" Id. (quoting Barricks v. Eli Lilly and Co., 481 F.3d 556, 560 (7th Cir. 2007)). In this case, Guinto has shown that all successful candidates for the 2004 SRO positions were at least ten years younger than him and less experienced. Further, most of the 2006 SRO candidates were at least ten years younger than Guinto. In addition, they were all eligible to apply for the same position within Exelon's Operation Department. The court finds that these factors are enough to show that these employees were "similarly situated."

### 3. *Exelon Established a Legitimate, Nondiscriminatory Reason for the Adverse Action*

Since Guinto has established a prima facie case, the burden shifts to Exelon to establish a legitimate non-discriminatory reason for denying Guinto admission into the SRO licensing class. Here, the Court finds that Exelon's proffered reasons are legitimate. Exelon has shown that Guinto was denied entry into the 2004 SRO licensing class after he was considered by the entire Selection Board. Three Selection Board members had personal experiences with Guinto and felt that he was not the best candidate for the program. Further, the Selection Board questioned his motivations and his future commitment to remaining in the SRO position. Exelon has therefore shown it had a nondiscriminatory reason for not accepting Guinto into the 2004 SRO licensing class.

Exelon has also shown a legitimate reason for denying Guinto entrance into the 2006 SRO licensing class. Pursuant to the Policy, Guinto underwent an independent employment

assessment. Guinto received a red (not recommended) rating. For this reason alone, Exelon could not allow Guinto to enter the SRO class. Further, Guinto has not alleged that the Policy was enacted for discriminatory purposes. Exelon has therefore established legitimate, nondiscriminatory reasons for denying Guinto entry into both the 2004 and 2006 SRO licensing classes.

### *4. Exelon's Proffered Reasons were not Pretextual*

After the Defendant has put forth a legitimate, non-discriminatory reason for its actions, the burden shifts back to Guinto to demonstrate that the proffered reason is pretextual. See Forrester v. Rauland-Borg Corp., 453 F.3d 416, 417 (7th Cir. 2006). "If it is the true ground and not pretext, the case is over." Id. However, if the proffered reason "is not the true ground, the employer may still be innocent of discrimination." Id. (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146-47 (2000)). For example, the employer may have "lied to conceal a reason that was discreditable but not discriminatory." Id. (citing Visser v. Packer Engineering Assoc., Inc., 924 F.2d 655, 657 (7th Cir. 1991)). Thus, "the pretext inquiry focuses on the honesty, not the accuracy, of the employer's stated reason for the termination." Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1130 (7th Cir. 1997). "[T]he fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." Essex v. United Parcel Serv. Inc., 111 F.3d 1304, 1308 (7th Cir. 1997).

Guinto relies primarily on two arguments to show that Exelon's proffered reason for denying him entry into the 2004 SRO licensing class was pretextual. First, he argues that since he was interviewed, and accepted, for the position of Work Week manager, Exelon had no real

reason for denying him entry into the SRO licensing class. Even though Guinto did pass a "Motivational Fitness" test in his Work Week Manager interview, this does not necessarily indicate that he was suited for the position of SRO. Further, Exelon did not deny Guinto entry into the 2004 SRO licensing class based only on a perceived lack of "motivational fitness." It took several factors into consideration, including what several co-workers perceived to be a lack of leadership, a lack of commitment to remaining in the SRO program, and questionable motivations for entering the SRO program.

Next, Guinto points to Cheryl Gayheart's comments about retirement to prove that Exelon's proffered reasons are pretextual. However, it is well established that inquiries about retirement are not evidence of age discrimination. Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992). "[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct." Id. In this case, there was only a single question about Guinto's retirement plans. This is not enough to indicate that Exelon discriminated against Guinto because of his age.

Guinto also argues that Exelon's proffered reasons for denying him entry into the 2006 SRO licensing class were pretextual. While Guinto admits that he received a red rating from MICA, he insists that the Policy should not apply to him. In addition, he asserts that other applicants did not pass the MICA assessment. As to the first claim, Guinto points to the language of the Policy, which states that "candidates rated red will not be hired or promoted." Guinto argues that since he was only seeking a lateral transfer, he did not need to pass the MICA assessment. The court finds this assertion meritless, as Guinto has no authority to interpret the Policy's express language. Guinto has presented no evidence that other SRO candidates were selected without first passing the MICA assessment. Guinto therefore cannot show that the

MICA assessment was a mere pretext for age discrimination. Because Guinto has not established that Exelon's reason for the adverse employment action was pretextual, his ADEA claim must fail.

## C. Retaliation

In Count II of his Complaint, Guinto alleges that Exelon retaliated against him for filing his initial EEOC charges. To establish a prima facie case of retaliation for filing a discrimination complaint, Guinto must show: (1) that he was engaged in protected activity; (2) that he suffered an adverse action by the employer; and (3) that a causal link exists between the protected activity and the adverse action. Brenner v. Brown, 36 F.3d 18, 19 (7th Cir. 1994).

Guinto filed two employment discrimination charges with the EEOC. He has thus established the first element of his prima facie case. Guinto also clearly suffered an adverse employment action when Exelon did not accept him into the 2006 SRO licensing class. However, Guinto provides no evidence that a causal link exists between the protected activity and the adverse employment action.

Exelon asserts that it denied Guinto entry into the 2006 SRO class because he failed to pass the MICA assessment. According to the Policy, an employee cannot be hired or promoted if they receive a red rating. When Guinto applied for admission to the 2006 SRO certification class, he took part in the MICA assessment pursuant to the Policy. At this time, he received a red rating. Guinto does not deny that this is Exelon's Policy, nor does he deny that he received a red assessment. In sum, all the available evidence on this issue indicates that Exelon was acting pursuant to its Policy, and not in retaliation against Guinto. Guinto therefore cannot establish the third element of his retaliation claim.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: April 23, 2008